LOWRIE v. H. A. MELDRUM CO.

(Circuit Court of Appeals, Second Circuit. April 25, 1904.)

No. 154.

**1. PATENTS—INFRINGEMENT—GARMENT FASTENER.**

The Steel patent, No. 652,407, for a garment fastener, designed to hold down the skirt band and belt so as to give the waist a downward curve in front, and which, as described, consists of a combination of hooks to hold the band and belt, with a shank fitted to be attached to the fastening devices of a corset, was not anticipated, and discloses invention, but is not infringed by a device otherwise similar, but which is fastened to the fabric of the corset by means of a safety pin; such device being substantially shown in the prior art.

Appeal from the Circuit Court of the United States for the Western District of New York.

This cause comes here on appeal from a decree adjudicating the validity and infringement by defendant of patent No. 652,407, granted June 26, 1900, to Anna M. Steel for a garment fastener. For opinion below, see 124 Fed. 761.

Harry C. Kennedy and Horace Pettitt, for appellant.

F. F. Church, for appellee.

Before WALLACE, LACOMBE, and TOWNSEND, Circuit Judges.

TOWNSEND, Circuit Judge. The record shows that for some years prior to the date of the patent in suit a host of would-be inventors had been directing their efforts toward the production of a practicable device for firmly fastening garments together at the waist. The earlier devices were generally designed chiefly to support the lower garment. Later such devices were also adapted to depress alike the upper and lower garments so as to give the required shape. The patentee herein appears to have constructed a device superior to those which had preceded it, and one which has achieved great commercial success. It is "adapted for the purpose of holding down the front of the skirt and the belt of women's garments; it having for its objects to prevent the skirt from 'hiking,' and also to produce a downward curve or slope of the skirt band and belt toward the front." It consists "essentially of a garment fastener composed of a shank provided with means for its attachment to the fastening devices of the corset, and provided at its upper end with hooks located in position to engage with the upper edge of the skirt band, and with hooks located above the plane of the first hooks, and adapted to engage with the upper edge of the belt."

The claims in suit are the following:

"(1) A garment fastener provided with means for its attachment to the fastening devices of a corset, and with two outwardly and downwardly extending hooks, each in a different plane, the one being adapted to engage with the upper edge of the skirt band, and the other with the upper edge of the belt, substantially as described."

"(3) A garment fastener comprising a shank having means for its attachment to a corset, and provided with a row of outwardly and downwardly extending hooks, projecting from lateral extensions on said shank, and with a second

row of outwardly and downwardly extending hooks in a different plane from that of the first row, substantially as and for the purpose specified."

The elements of this combination were old. Shanks provided with means, etc., said means being specifically described as "a series of longitudinal slots or other suitable sockets for the purpose of adapting the shank to be attached to one of the usual fastening studs in corsets," were shown in prior patents to Towson and Carr & Wolf, and on reference to the latter patent a claim by this patentee for such means was rejected in the Patent Office. Hooks in different planes for engaging respectively the belt and shirt waist were shown and described in the Dunbar patent of 1899. And Sanders, in his patent of 1899, had shown and described a device to keep men's belts in place, which comprised a combination of elongated shank, and means capable of attachment to a woman's corset or corset clasp, with hooks in different places at the upper end of the shank, adapted to keep a skirt band and belt in position. But when, at the close of the nineteenth century, the decrees of fashion transformed the circular waist of nature, characteristic of that period, into the conventional downwardly curved slope in front, in the similitude of a girdle, or the pointed waist of the Elizabethan period, a new problem was presented to the designers of garment clasps. They must no longer fasten and support the garments at the waist line of nature, and in a natural position. They must now force the meeting edges of skirt band and belt, and incidentally of the shirt waist, down below the true waist, and "draw and hold the front of the skirt downward" by an attachment so firmly fastened as to be adapted to the anatomy of a woman having a prominent abdomen, and to prevent the skirt and belt from rising above it. The patentee herein met the exigencies of the situation by providing in compact form a combination of the old devices, but now adapted to grip with the corset stud, and to engage the meeting garments and hold them down in suitable relative positions. It appears that in so doing she exercised in a humble way, and to a limited extent, the faculty of invention. She certainly succeeded in producing a practical fastener, superior to all the devices of the prior art. We conclude that the claims in suit of her patent are valid, so far as they cover the precise device "substantially as described."

The defendant has attempted to meet the demands of the new fashion by providing a fastener which should be so within the disclosures of the prior art, and without the limitations of the patented fastener, as not to infringe. It has constructed a shank provided with the outwardly and downwardly extending hooks, in different planes, of the patent in suit. But it has not provided any means for attachment to the fastening devices or stud of the corset. Instead, it has equipped the lower end of the shank with an ordinary safety pin, for the purpose of fastening the device to the fabric of the corset, and adapted to engage only with such fabric. That this safety pin is not "a means for attachment to the fastening devices of a corset" is proved by the admission of complainant's witness Mrs. Holch, a dealer in such articles, that she has seen a great many of defendant's devices in use; that all of them which she has seen have been pinned to the fabric of the corset and skirts; that, while it would be possible to engage the

corset stud with the safety pin, pinning through the fabric is the quickest way, by the self-evident fact that such fastening would not be firm, stable, or sufficiently strong, if accomplished by engagement of safety pin and stud, and finally by the fact that such engagement would not be practicable, because the long distance between the corset studs would preclude the possibility of practical adjustment. The sole question, then, is as to infringement of the third claim by broadening the same so as to include a safety pin, as the equivalent of the "means for attachment to a corset * * * substantially as described." But the effect of thus broadening said claim is to raise the question of patentable novelty, in view of design patent No. 25,795, granted in 1896 to E. B. Bunnell for a "garment supporting buckle or pin such as may be used to retain in place a lady's shirt waist, skirt, and belt." The specifications describe and the drawings show a body portion or plate provided with an upper hook and two arms extending downwardly from its ends; said arms consisting of spring clasps, the lower portions of which are adapted to grasp and hold down a shirt waist in place. If the spring be omitted, the sole function of the clasps would be that of downwardly extending hooks to keep the skirt from rising up, and to produce a downward curve of said band. The center of the plate is provided with a safety pin for attachment to the fabric of the corset or other garment. The single material difference between this fastener and that of defendant is that in the latter the band is lengthened, and the safety pin is at the lower end instead of in the center of the band. But this change is a mere mechanical adaptation to the later requirement of fashion, that the skirt band should be kept down, instead of held up, as formerly. In view of this complete disclosure of the means employed by defendant, the scope of the third claim cannot be enlarged to cover defendant's device without destroying its validity. The admissions of complainant's expert as to the Bunnell patent confirm this view. The argument of complainant's counsel that Bunnell does not anticipate, because the statement of functions in the specifications is not a proper subject for consideration, is immaterial, because such statement, in connection with the drawings, constitutes a complete disclosure of defendant's construction in a printed publication prior to the patent in suit.

The decree of the court below is reversed, with costs of this court, and the cause is remanded to the Circuit Court, with instructions to enter a decree in accordance with the foregoing opinion.